ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

SEAN C. DUFFY
Trial Attorney (NY Bar No. 4103131)
Natural Resources Section
sean.c.duffy@usdoj.gov
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 598-7291

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 6:26-cv-186-AA (Lead)<br>Case No. 6:25-cv-2396-MC (Trailing) |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants move the Court pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiff State of Oregon's Complaint, Dkt. No. 1 ("Compl."), consolidated with Plaintiff City of Newport's Complaint in *City of Newport v. Noem et al.*, Case No. 6:25-cv-2396-MC, Dkt. No. 1 ("*Newport* Compl.") ("the Complaints"). As stated in the attendant memorandum, Plaintiffs failed to challenge final agency action, the claims are unripe, they lack standing, they cannot avail themselves of any applicable waiver of sovereign immunity, and the claims should be dismissed. The parties have conferred and Plaintiffs oppose this motion. *See* LR 7-1(a).

\* \* \*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 1

    A.    Complaints' Allegations ................................................................. 1

    B.    Ferguson Declaration ..................................................................... 4

STANDARD OF REVIEW ........................................................................................ 5

ARGUMENT ............................................................................................................. 5

    I.    Plaintiffs cannot establish a waiver of sovereign immunity under the APA because there has been no final agency action ......................................................... 5

    II.    Plaintiffs' claims are not ripe ............................................................... 9

    III.    Plaintiffs cannot establish any injury that was caused by the challenged action and that would be redressable by the Court ................................................. 11

    IV.    Plaintiffs have not asserted an *ultra vires* claim ..................................... 13

    V.    This Court has no jurisdiction over the City's breach of contract claims ............ 14

CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)..............................................................................................10

*Albrecht v. Comm. on Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.*,
    357 F.3d 62 (D.C. Cir. 2004).............................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................14

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979)............................................................................................12

*Badgerow v. Walters*,
    596 U.S. 1 (2022)..................................................................................................5

*Bakersfield City Sch. Dist. of Kern Cnty. v. Boyer*,
    610 F.2d 621 (9th Cir. 1979) ............................................................................15

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*,
    502 U.S. 32 (1991)..............................................................................................13

*Bennett v. Spear*,
    520 U.S. 154 (1997).........................................................................................6, 8

*California v. Norton*,
    311 F.3d 1162 (9th Cir. 2002) ............................................................................6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................12

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve. Sys.*,
    603 U.S. 799 (2024)..............................................................................................6

*Ctr. for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) ............................................................................12

*Ctr. for Biological Diversity v. Haaland*,
    58 F.4th 412 (9th Cir. 2023) ...............................................................................7

*Dalton v. Specter*,
    511 U.S. 462 (1994)..............................................................................................6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.*,
    528 U.S. 167 (2000)......................................................................................12, 13

*Fund for Animals, Inc. v. BLM*,
    460 F.3d 13 (D.C. Cir. 2006).............................................................................7

*Indep. Equip. Dealers Ass'n v. EPA.*,
   372 F.3d 420 (D.C. Cir. 2004) ................................................................ 6

*Ingersoll-Rand Co. v. United States*,
   780 F.2d 74 (D.C. Cir. 1985) .................................................................. 15

*James v. Caldera*,
   159 F.3d 573 (Fed. Cir. 1998) ............................................................... 15

*Kalispel Tribe of Indians v. U.S. Dep't of the Interior*,
   999 F.3d 683 (9th Cir. 2021) ................................................................. 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................ 5

*Lee v. Thornton*,
   420 U.S. 139 (1975) .............................................................................. 15

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ................................................................ 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................ 11, 12

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) .............................................................. 13

*N. Side Lumber Co. v. Block*,
   753 F.2d 1482 (9th Cir. 1985) .............................................................. 15

*Nevada v. Dep't of Energy*,
   457 F.3d 78 (D.C. Cir. 2006) ................................................................ 10

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004) .................................................................................. 6

*Nuclear Regul. Comm'n v. Texas*,
   605 U.S. 665 (2025) ........................................................................ 13, 14

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*,
   676 F.3d 829 (9th Cir. 2012) ................................................................ 10

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006) .................................................................. 9

*Rattlesnake Coal. v. EPA*,
   509 F.3d 1095 (9th Cir. 2007) ................................................................ 9

*Reno-Sparks Indian Colony v. Haaland*,
   663 F. Supp. 3d 1188 (D. Nev. 2023) ................................................... 10

*Richardson v. Morris*,
   409 U.S. 464 (1973) .............................................................................. 15

*S.F. Herring Ass'n v. Dep't of the Interior*,
   946 F.3d 564 (9th Cir. 2019) ............................................................................ 6

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
   65 F.4th 1012 (9th Cir. 2023) .......................................................................... 5

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
   605 U.S. 168 (2025) ......................................................................................... 10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................................... 9

*Texas v. United States*,
   523 U.S. 296 (1998) ..................................................................................... 10, 11

*Ukiah Valley Med. Ctr. v. FTC*,
   911 F.2d 261 (9th Cir. 1990) ............................................................................ 9

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ........................................................................................... 6

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ......................................................................................... 12

*Yazzie v. Hobbs*,
   977 F.3d 964 (9th Cir. 2020) .......................................................................... 12

**Statutes**

16 U.S.C. §§ 1456(c)(1) ...................................................................................... 10

28 U.S.C. § 1346(a)(2) ......................................................................................... 14

28 U.S.C. § 1491(a)(1) ......................................................................................... 14

42 U.S.C. § 4436(b) ............................................................................................. 11

5 U.S.C. § 551 ................................................................................................... 6, 7

5 U.S.C. § 702 ....................................................................................................... 6

5 U.S.C. § 704 ................................................................................................... 6, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 14

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 5

**Other Authorities**

1976 U.S. Code Cong. & Ad. News 6121 .......................................................... 15

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Plaintiffs bring this action to challenge the Immigration and Customs Enforcement's (ICE) intention to construct and operate a temporary holding and processing facility in the City of Newport, Oregon.[1] But this lawsuit is fatally flawed because no such decision has been made and ICE has no present intent to construct any such facility in or around the City of Newport or anywhere within Lincoln County, Oregon. Ferguson Decl. ¶ 6. Because Plaintiffs have failed to show that there has been a final decision, they necessarily fail to show final agency action, meaning their case falls outside the Administrative Procedure Act's (APA) waiver of sovereign immunity. Unsurprisingly, Plaintiffs' claims against a mere intent to act are unripe, and they lack standing to assert them. All of the claims should be dismissed. Plaintiffs' *ultra vires* and contract claims should be dismissed for additional independent reasons. Plaintiffs have not asserted an *ultra vires* claim and, even if there were final agency action, the Court has no jurisdiction over Plaintiffs' contract claims.

## BACKGROUND

### A.    Complaints' Allegations

The State of Oregon and City of Newport ("Plaintiffs") allege that an ICE holding and processing center that houses up to 200 aliens will be constructed in Newport or on the Oregon coast in and around the City of Newport. *Newport* Compl. ¶¶ 48-49; Compl. ¶ 1.[2] They contend

---

[1] In the Complaints, Plaintiffs describe the alleged facility as a "detention facility" or "detention center." *See, e.g.*, Compl. ¶ 1; *Newport* Compl. ¶ 1. Defendants use the term "temporary holding/processing facility." Second Decl. of Ralph Ferguson ¶ 3 ("Ferguson Decl."), attached as Ex. 1.

[2] Specifically, the City of Newport alleges that Defendants will convert an air facility in Newport, Oregon ("AIRFAC Newport") and potentially adjacent parcels of land into an ICE holding/processing facility. *Newport* Compl. ¶¶ 48, 62-66. The State of Oregon's amended

that ICE told potential contractors that aliens arrested in Portland and in a 350-mile radius around Newport could wind up in the alleged holding and processing facility and that it plans to hold most detainees at the facility for fewer than 72 hours (although it may at times be longer). Compl. ¶¶ 25-26; *Newport* Compl. ¶ 57.

Plaintiffs erroneously contend that ICE, in cohort with its contractors, has taken steps to further this effort, resulting in agency action. Specifically, Plaintiffs allege that a contractor sent a notice of intent to lease 4.3 acres of land at the Newport Municipal Airport for "federal operations" to begin in December 2025 and began investigating acquisition of another 10.73 acres of land from the City and the Airport. Compl. ¶ 20; *Newport* Compl. ¶¶ 64-66. Plaintiffs also contend that a contractor contacted a hotel in Newport about reserving as many as 200 hotel rooms for up to a year, Compl. ¶ 21, and contacted other hotels in Newport and Yachats (24 miles south of Newport) inquiring about housing for one year starting on December 15, 2025. *Newport* Compl. ¶¶ 77-79.

The State further alleges that ICE issued solicitations to contractors to perform work related to the construction and use of a holding and processing facility, including a solicitation that seeks contractors to perform health services at a holding and processing facility as early as January 2026, and that a contractor that specializes in refugee care has posted twelve full-time job openings in Newport listed as "hazardous duty." Compl. ¶¶ 23-24. The City similarly alleges that a contractor has advertised for health services positions, with "DHS or ICE detention center experience" as a preferred qualification. *Newport* Compl. ¶¶ 81-83. The State also claims that a contractor posted multiple full-time job opportunities in Newport on December 7, 2025, including for a health

---

complaint made the same allegations. *Newport Fishermen's Wives v. United States Coast Guard*, Case No. 6:25-cv-2165-AA (D. Or.) Dkt. No. 58 ¶¶ 66-67. The State of Oregon then broadened its allegations in the "conforming complaint," now alleging that a holding and processing facility will be constructed "on the Oregon coast, likely in or around Newport." Compl. ¶ 34.

services administrator, whose responsibilities include adherence to government regulations, including "ICE Performance-Based National Detention Standards." Compl. ¶ 31.

The City alleges that contractors contacted a septic company in early November 2025 regarding a need to have 5,000 – 10,000 gallons of sewage pumped for up to three years, as well as portable toilets and handwashing stations, *Newport* Compl. ¶¶ 67-68 and contacted waste and recycling providers in late November 2025 seeking quotes for the delivery of potable water. *Newport* Compl. ¶¶ 71-73. The Complaints also assert that contractors contacted public works departments in Newport and Eugene on December 15, 2025, about sewage disposal from a full-service hotel in Newport with a daily volume of 80-130 gallons per day from portable toilets and 9,600-15,600 gallons per day from hotel functions. Compl. ¶¶ 32-33, *Newport* Compl. ¶¶ 68-69. Finally, the City alleges that a company specializing in temporary facilities and logistics contacted a Newport catering company in late November and early December asking for a quote for meals for 215 people per day. *Newport* Compl. ¶¶ 74-76.

The State acknowledges that after ICE conducted an initial assessment, there is no plan to begin construction of a facility in or around the Newport Municipal Airport or the City of Newport. Compl. ¶ 28. But the State "suggest[s] that Defendants still intend to open an ICE detention facility on the Oregon Coast, likely in or around Newport." Compl. ¶ 30.

Based on these allegations, Plaintiffs assert four overlapping claims that the purported decision to construct, maintain, and operate an ICE holding/processing facility in or around Newport violates the Coastal Zone Management Act (CZMA), the National Environmental Policy Act (NEPA), and the APA, and is *ultra vires.* Compl. ¶ 75-95; *Newport* Compl. ¶¶ 130-155. The City separately claims that Defendants violated a deed between the City and the United States. *Newport* Compl. ¶¶ 30-32, 156-171.

Plaintiffs seek a declaration that the purported decision to construct, maintain, and operate an ICE holding/processing facility violates the CZMA, NEPA, and the APA and is *ultra vires*. Plaintiffs also seek to enjoin construction and operation of the facility and ask the Court to set aside and vacate the alleged decision to construct and maintain the facility. Compl. Prayer for Relief 16-17; *Newport* Compl. Prayer for Relief 32-33. The City also seeks specific performance and declaratory relief directing Defendants to use AIRFAC Newport for the primary purpose of a Coast Guard aviation facility and prohibiting it from building an ICE holding/processing facility, or alternatively that the Government's interest should revert to the City. *Newport* Prayer for Relief 33-34.

### B.    Ferguson Declaration

The Ferguson Declaration makes clear that ICE has made no decision to begin construction of a temporary holding/processing facility in or around the City of Newport or anywhere within Lincoln County, Oregon. Ferguson Decl. ¶ 5. The Asset and Facilities Management, Parole, and Law Enforcement Program Unit had begun environmental compliance during an initial assessment of ICE using AIRFAC Newport as a temporary holding and processing facility. *Id.* ¶ 3. But on December 4, 2025, the Commandant for the Coast Guard notified ICE that the site would be unavailable for such use. *Id.* This withdrew consideration of AIRFAC Newport for use by ICE as a temporary holding and processing facility. Upon the determination by the Commandant, ICE ceased planning preliminary steps for a temporary facility in or around AIRFAC Newport. When consideration was halted, only the initial steps of environmental compliance activities had been undertaken. *Id.* ¶¶ 3-5. No construction has taken place and there was no irretrievable commitment of resources during the initial assessment of potentially using AIRFAC Newport as an ICE temporary holding/processing facility. *Id.* ¶ 5. ICE has made no decision to build such a facility in

or around the City of Newport, Oregon or anywhere within Lincoln County, Oregon and it has no present intention to begin construction or to open a temporary holding/processing facility in or around the City of Newport, Oregon or anywhere within Lincoln County, Oregon. *Id*. ¶ 6.

## STANDARD OF REVIEW

"The district courts of the United States are courts of limited jurisdiction, defined (within constitutional bounds) by federal statute." *Badgerow v. Walters*, 596 U.S. 1, 7 (2022). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation modified). A court reviews a motion to dismiss a complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union,* 65 F.4th 1012, 1028 (9th Cir.) (citation omitted), *cert. denied*, 144 S. Ct. 190 (Mem.) (2023). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation modified). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* at 1121-22.

## ARGUMENT

### I.  **Plaintiffs cannot establish a waiver of sovereign immunity under the APA because there has been no final agency action.**

The Court lacks subject matter jurisdiction over Plaintiffs' claims under the APA because Plaintiffs cannot establish the prerequisite to bringing such claims: final agency action. Because NEPA and the CZMA do not contain their own provisions for judicial review, the merits of

Plaintiffs' claims are reviewed under the APA. *California v. Norton*, 311 F.3d 1162, 1170 (9th Cir. 2002). Section 702 of the APA waives sovereign immunity for actions against federal agencies seeking nonmonetary relief, and provides a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" the right to obtain judicial review. 5 U.S.C. § 702. And the APA limits review of "agency action" to "final agency action." *Id.* § 704. *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve. Sys.*, 603 U.S. 799, 808 (2024) ("While § 702 equips injured parties with a cause of action, § 704 limits the agency actions that are subject to judicial review."). An agency action is "final" when (1) the agency reaches the "consummation" of its decisionmaking process and (2) the action determines the "rights and obligations" of the parties or is one from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The finality requirement is a necessary "prerequisite to review" of any APA claim. *Dalton v. Specter,* 511 U.S. 462, 469 (1994). In the Ninth Circuit, "the final agency action requirement has been treated as jurisdictional." *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019).

For there to be "final agency action," 5 U.S.C. § 704, first there must be "agency action." *S.F. Herring Ass'n*, 946 F.3d at 575. Agency action for purposes of the APA is limited to the set of "circumscribed, discrete agency actions" listed in the APA, which defines agency action as "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). While the APA defines "agency action" broadly and "is meant to cover comprehensively every manner in which an agency may exercise its power," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (citation omitted), "the term is not so all-encompassing as to authorize [courts] to exercise judicial review over everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA.*,

372 F.3d 420, 427 (D.C. Cir. 2004) (citation modified) (finding that a letter from the EPA disagreeing with a petitioner's proposed interpretation of an emissions regulation is not reviewable agency action because it "imposed no obligations and denied no relief," "[c]ompell[ed] no one to do anything," and "had no binding effect whatsoever."); *see also Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 420 (9th Cir. 2023) (finding that the Fish and Wildlife Service's decision not to amend the Grizzly Bear Recovery Plan, is not reviewable agency action).

Here, Plaintiffs identify no rule, order, license, sanction, relief, or equivalent that they are challenging. *See* 5 U.S.C. § 551(4), (6), (8), (10), (11), (13) (defining terms). At most, the Complaints allege that Defendants, or contractors acting for them, took a series of preliminary planning steps toward constructing and operating an ICE holding/processing facility. But the alleged activities that Plaintiffs challenge consist largely if not exclusively of inquiries about potential future contracts, lease agreements, or real estate acquisitions. *See Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 18-22 (D.C. Cir. 2006) (agency plan is unreviewable insofar as it reflects only a nonbinding statement of something the agency intends to do in the future). None of those activities qualifies as agency action under the APA. Plaintiffs' claims based on the APA fail for that reason alone.

Further, even if Plaintiffs could somehow establish agency action, they cannot show final agency action under *Bennett*'s two-prong test. None of the preliminary undertakings that Plaintiffs allege "mark the consummation of the agency's decisionmaking process." This is true both as to the nature of the undertakings themselves—which consist of inquiries for potential contracts and advertisements soliciting potential employment—and from the fact that AIRFAC Newport is no longer available as a potential holding and processing facility. As the Ferguson Declaration makes clear, no construction has taken place at AIRFAC Newport and there was no irretrievable

commitment of resources during Defendants' initial assessment of the site. Ferguson Decl. ¶ 5. The Asset and Facilities Management, Parole, and Law Enforcement Program Unit had begun environmental compliance during an initial assessment of ICE using AIRFAC Newport as a temporary holding and processing facility. *Id.* ¶ 3. But on December 4, 2025, the Commandant for the Coast Guard notified ICE that the site would be unavailable for such use. *Id.* This withdrew consideration of AIRFAC Newport for use by ICE as a temporary holding and processing facility. *Id.* ¶ 5. ICE has made no decision to build any such facility, has no present intent to make such a decision, and is not currently building any such facility in or around Newport or anywhere in Lincoln County, Oregon. *Id.* ¶ 6. Likely recognizing the frailty of the allegations in their initial amended complaint, the State broadened the allegations in its "conforming complaint" to baselessly allege, upon information and belief, that although ICE has abandoned efforts to use Newport Municipal Airport as an ICE holding/processing facility, "Defendants have shifted their efforts to another location on the Oregon coast, likely in or around Newport." Compl. ¶ 34. This allegation is conjectural and without merit, and is belied by the Ferguson Declaration, which states unequivocally that ICE has no present intention to construct a facility in or around Newport or anywhere in Lincoln County, Oregon. Ferguson Decl. ¶ 6. Plaintiffs simply cannot show that they have challenged any action of the agency that marks the consummation of the agency's decision-making process to construct an ICE holding and processing facility at AIRFAC Newport, within the City of Newport, or within Lincoln County, Oregon. *See Bennett*, 520 U.S. at 178 (to be final, agency action "must not be of a merely tentative or interlocutory nature."). This, too, is fatal to their claims under the APA.

Plaintiffs cannot satisfy the second prong of the *Bennett* test because they cannot show that any action determined the "rights or obligations" of the parties or is one from which "legal

consequences will flow." *Id.* (citation modified). The most obvious reason for this is that, as noted

above, there was no agency action at all. Further, "[n]o construction has taken place and there had

been no irretrievable commitment of resources during [the] initial assessment of" potentially using

AIRFAC Newport as an ICE temporary holding/processing facility. Feguson Decl. ¶ 5.

In short, while the finality of agency action is "interpreted in a pragmatic and flexible

manner," *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citation

modified), Plaintiffs cannot establish any final agency action subject to the APA. Because there is

no final agency action under the APA, and Plaintiffs merely claim that ICE "intend[s]" to open a

facility in or around Newport, Compl. ¶ 30, the Court has no jurisdiction over the APA,[3] NEPA,

and CZMA claims. *See Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007) ("Absent

final agency action, there [is] no jurisdiction in the district court to review the NEPA claim."); *see

also Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) ("a finding of finality,

or of an applicable exception, is essential when the court's reviewing authority depends on one of

the many statutes permitting appeal only of 'final' agency action, such as . . . the APA, 5 U.S.C. §

704"). Counts 1-4 of the Complaints should be dismissed under Rule 12(b)(1).

## II.    Plaintiffs' claims are not ripe.

For many of the same reasons that Plaintiffs cannot establish that they are challenging final

agency action, they also cannot show that this matter is ripe for judicial review. One of the limits

on federal courts' subject matter jurisdiction comes from Article III of the federal Constitution,

which empowers federal courts to decide only "cases" or "controversies." *Spokeo, Inc. v. Robins*,

---

[3] In Count 3, Plaintiffs purport to assert a standalone claim that ICE's purported decision to construct a holding and processing center violates the APA because Defendants have not offered an explanation for the alleged decision. Compl. ¶¶ 89-90; *Newport* Compl. ¶¶ 148-151. A standalone APA claim is improper, but even if Plaintiffs could bring such a claim, it would be subject to the APA's final agency action requirement, and there is no final agency action here.

578 U.S. 330, 337 (2016). "Ripeness is one component of the Article III case or controversy requirement. The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) (*quoting Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). In doing so, it prevents the courts, "from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148-49. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified). This includes claims that fail to challenge final agency action. *See Reno-Sparks Indian Colony v. Haaland*, 663 F. Supp. 3d 1188, 1200 (D. Nev. 2023); *Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) ("final agency action pursuant to the [APA] is a crucial prerequisite to ripeness") (citation modified).

None of the claims in the operative Complaints are ripe for adjudication. Instead, they all flow from the same faulty premise that a final decision has been made to construct, maintain, and operate an ICE holding/processing facility at AIRFAC Newport (or elsewhere in the City of Newport or nearby). Based on that flawed premise, the Complaints allege that Defendants had unlawfully failed to consult under the CZMA or assess potential environmental effects under NEPA.[4] But these claims rest entirely on there having been a final agency action for which such

---

[4] The CZMA requires that federal agencies carrying out an activities within or outside the coastal zone that affect any land or water use or natural resource of the coastal zone provide the relevant state with a determination that the activity will be carried out in a manner consistent to the maximum extent practicable with the enforceable policies of the state's coastal zone management program. 16 U.S.C. §§ 1456(c)(1). NEPA ensures that agencies and the public are aware of the environmental consequences of proposed projects. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,

consultation or analysis was required. Although preliminary inquiries had been conducted about the potential for action, no action took place in this case. Highlighting the inchoate nature of the process is the fact that, as the State alleges, ICE had hired a "Project Manager/Environmental Scientist as a contractor to begin the process of initiating a CZMA consultation and developing a federal consistency determination for the ICE detention facility in Newport, Oregon," Compl. ¶ 22, and as noted in the Ferguson Declaration, environmental review had commenced, Ferguson Decl. ¶¶ 4-5. In other words, the agency was taking the steps it determined would be required to comply with CZMA and NEPA if it were to make a final decision. But it ultimately decided not to proceed with the holding/processing facility and therefore had no reason to complete those analyses. Plaintiffs' claims, which are based on a decision that has not happened or some abstract intent, are not ripe. *Texas*, 523 U.S. at 300.

### III.    Plaintiffs cannot establish any injury that was caused by the challenged action and that would be redressable by the Court.

Plaintiffs' challenge to a hypothetical ICE facility also means that they lack an injury traceable to Defendants' conduct that can be redressed by this Court. In short, Plaintiffs lack standing for the same reasons there is no final agency action: there is no imminent, much less final, agency action that provides a basis for a justiciable claim. This provides additional grounds for dismissing the entire lawsuits.

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing to sue, "a plaintiff must show: (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and

---

605 U.S. 168, 177 (2025). Under NEPA federal agencies fulfill their NEPA duty to study the environmental effects of "major federal actions" by analyzing impacts in one of three ways. 42 U.S.C. § 4436(b).

(b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000). Conjectural, hypothetical, or speculative injuries, such as "[a]llegations of possible future injury," do not suffice. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Defs. of Wildlife*, 504 U.S. at 560–61 (1992). Rather, "[a] threatened injury must be certainly impending to constitute injury in fact." *Whitmore*, 495 U.S. at 158 (internal quotation marks omitted) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). "The failure to plead—much less make a clear showing of—concrete and particularized injury" is enough to doom a plaintiffs' standing. *Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020).

As noted above, Plaintiffs have not identified any final agency action that caused them to suffer a concrete and particularized injury. Plaintiffs instead ask this Court to police in the abstract potential ICE facilities on the Oregon coast, asserting environmental and informational injuries that might arise if an ICE facility were constructed. Compl. ¶¶ 73-74. But Plaintiffs' conjecture about ICE's plans is neither concrete nor particularized; rather, it is precisely the kind of speculation that the Supreme Court and Ninth Circuit have explained do not provide a basis for standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) ("speculative chain of possibilities" cannot establish an actual or imminent injury in fact); *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (noting that "conjectural, hypothetical, or speculative injuries, such as allegations of possible future injury, do not suffice to establish standing").

The lack of final agency action here also means that Plaintiffs cannot satisfy the traceability and redressability prongs of standing. With respect to the former, a plaintiff must show that its

"injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) (quotation omitted). In other words, absent a challenged action there can be no traceable injury. Because ICE has made no decision to build a detention facility, Plaintiffs cannot point to an injury traceable to some action by Defendants. So too with redressability. A plaintiff must show that "it is likely, as opposed to merely speculative, that [its] injury will be redressed by a favorable decision." *Laidlaw Envtl. Servs., Inc.*, 528 U.S. at 181. Again, Plaintiffs cannot show that a favorable court order will redress their complaints about a detention facility because no decision has been made to construct or operate such a facility. In short, Plaintiffs have failed to meet any of the requirements to show that the Court has Article III jurisdiction over their claims.

## IV.    Plaintiffs have not asserted an *ultra vires* claim.

Plaintiffs attempt to repackage their claims brought under the APA to separately claim that Defendants' alleged violations of the CZMA and NEPA were *ultra vires*. This attempt to repackage their claims to avoid the APA's requirements is improper. *Ultra vires* review is available "only when an agency has taken action entirely in excess of its delegated powers and contrary to a specific prohibition." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation omitted). *Ultra vires* claims require a showing that government officials acted "without any authority whatever," which is not the case here. *Kalispel Tribe of Indians v. U.S. Dep't of the Interior*, 999 F.3d 683, 691 (9th Cir. 2021) (citation modified). That review is unavailable if "a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review.'" *Nuclear Regul. Comm'n* 605 U.S. at 681 (quoting *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).

Here, the APA provides a meaningful and adequate opportunity for Plaintiffs to bring their statutory claims under the CZMA and NEPA. Plaintiffs' *ultra vires* claims merely restate their claims under these statutes. Indeed, the Complaints offer no assertions of *ultra vires* actions that are in any way distinct from the CZMA and NEPA claims, which must be reviewed under the APA. *See* Compl. *(ultra vires* claim) ¶ 93 ("Defendants have violated the CZMA"), ¶ 94 ("Defendants have violated NEPA") *Newport* Compl. (*ultra vires* claim) ¶ 153 ("Defendants have violated the CZMA"), ¶ 154 ("Defendants have violated NEPA"). The *ultra vires* claims fail because they assert nothing beyond the underlying CZMA and NEPA claims, which fall under the APA. *See Nuclear Reg. Comm'n*, 605 U.S. at 682 (finding that *ultra vires* claims fall short where plaintiffs "basically dress up a typical statutory-authority argument as an ultra vires claim.").

Because there is no independent basis for asserting an *ultra vires* claim, the Court should dismiss Count 4 of the Complaints.[5]

## V.    This Court has no jurisdiction over the City's breach of contract claims.

There is no waiver of sovereign immunity and hence no subject matter jurisdiction to adjudicate the City's breach of contract claims. While the Tucker Act waives sovereign immunity and grants the United States Court of Federal Claims exclusive jurisdiction over contract actions against the government for money damages exceeding $10,000, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act grants district courts concurrent jurisdiction over claims founded on a contract with the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(2), the City does not seek money damages and the waiver of sovereign immunity in those statutes is thus unavailable. The

---

[5] Alternatively, because Count 4 pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and should also be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

Tucker and Little Tucker Acts "empower[] district courts to award damages but not to grant injunctive or declaratory relief." *Lee v. Thornton*, 420 U.S. 139 (1975); *see also Bakersfield City Sch. Dist. of Kern Cnty. v. Boyer*, 610 F.2d 621, 628 (9th Cir. 1979) (the "district court cannot, when the basis for its jurisdiction is 28 U.S.C. § 1346(a)(2) . . . grant injunctive relief to compel compliance with a statute"). The prohibition against district-court equitable relief under § 1346(a)(2) stems from the fact that "the jurisdiction of the district courts under the Act was made expressly 'concurrent with the Court of Claims'" (now the Court of Federal Claims), which lacks the power to grant equitable relief under § 1491(a)(1). *See Richardson v. Morris*, 409 U.S. 464, 465–66 (1973).

Here, the City seeks declaratory and injunctive relief in its breach of contract claims, but the Tucker Act "impliedly forbids" declaratory and injunctive relief, and it precludes a waiver of sovereign immunity under the APA. *Albrecht v. Comm. on Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004). Thus, "the APA does not waive sovereign immunity for contract actions brought against the government in a federal district court." *Id.* at 68. That jurisdictional barrier is mandatory, and for good reason. It ensures that contract claims against the government are channeled into the court with "unique expertise," *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985), which Congress has generally not empowered to grant injunctive relief like specific performance, *see James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998). "In fact, the legislative history of [APA] § 702 specifically mentions the Tucker Act as a statute that 'impliedly forbids' relief within the meaning of § 702." H.R. Rep. No. 1656, 94th Cong., 2d Sess. 13, reprinted in 1976 U.S. Code Cong. & Ad. News 6121, 6133. *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985).

The City has identified no waiver of sovereign immunity that allows it to obtain specific performance and declaratory relief directing Defendants to use AIRFAC Newport for the primary purpose of a Coast Guard aviation facility. Nor has it identified a waiver of sovereign immunity supporting its claim that the Government's interest should revert to the City and an affirmative injunction should prohibit Defendants from building an ICE holding/processing facility. Because neither the Tucker Act nor the APA waives sovereign immunity to allow the City to bring its breach of contract claims, the Court lacks jurisdiction over those claims and Counts 5 and 6 of the City of Newport's Complaint should be dismissed.

## CONCLUSION

Although there are several grounds on which the Court may dismiss this case, there is one common refrain: Plaintiffs do not challenge a final agency decision or action but instead attempt to challenge a series of preliminary inquiries made in furtherance of a potential future final agency action that never occurred. This matter, including all of the claims, should therefore be dismissed.

Dated: February 27, 2026

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Sean C. Duffy*
SEAN C. DUFFY
Trial Attorney (NY Bar No. 4103131)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 598-7291
sean.c.duffy@usdoj.gov

*Attorneys for Federal Defendants*